# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME L. GRIMES,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES FOR NORTHCENTRAL UNIVERSITY; (NCU) NORTHCENTRAL UNIVERSITY, official capacity; ASHLEY FORREST, individual and official capacity; BRANDON ROMERO, individual and official capacity; JIMMY BROWN, individual and official capacity,<br><br>　　　　　　　　Defendants. | Case No.: 22-CV-1321 TWR (JLB)<br><br>**ORDER (1) DISCHARGING ORDER TO SHOW CAUSE, (2) DIRECTING CLERK OF COURT TO UPDATE PLAINTIFF'S ADDRESS, (3) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, (4) DENYING MOTION FOR LEAVE TO FILE ELECTRONICALLY, (5) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. 1915(e), AND (6) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>(ECF Nos. 2, 3, 6, 12, 13) |

Plaintiff Jerome L. Grimes, proceeding pro se, initiated this action on September 2, 2022, filing a Complaint[1] (ECF No. 1), Motion for Leave to Proceed *in Forma Pauperis*

---

[1] The only named Defendant in the initial complaint was the Board of Trustees for Northcentral University, but Plaintiff subsequently filed a First Amended Complaint which added Northcentral University, Ashley Forrest, Brandon Romero, and Jimmy Brown as Defendants. (*See* ECF No. 6, "FAC.")

("IFP") (ECF No. 2), and Motion for Leave to File Electronically, (ECF No. 3). In the ensuing months, the Court served Plaintiff with several filings via U.S. Mail Service, (*see* ECF No. 4, 5, 10), and each was returned by the Post Service as undeliverable, (*see* ECF Nos. 7, 8, 11). On March 16, 2023, Plaintiff filed a Notice of Change of Address, which the Clerk of Court designated as "incomplete." (*See* ECF No. 12.) Consequently, on March 20, 2023, the Court ordered Plaintiff to file a complete Notice of Change of Address or to show cause why this action should not be dismissed within fourteen days.[2] (*See* ECF No. 13.)

## I. Order to Show Cause and Notice of Change of Address

Upon further inspection, the Court finds Plaintiff's Notice of Change of Address sufficient. The Notice designates Plaintiff's current address as: "GENERAL DELIVERY, Montclair, CA 91763-9999." (*See* ECF No. 12.) "General delivery service permits a person to receive mail addressed merely to his or her name, with the designation 'General Delivery, [City Name]'" and "is intended primarily to serve as a temporary means of delivery, although homeless persons may use the service indefinitely." *Currier v. Potter*, 379 F.3d 716, 722 (9th Cir. 2004) (citations omitted); *see also* Domestic Mail Manual § 508.6.1 ("General delivery is intended primarily as a temporary means of delivery: a. For transients and customers not permanently located. b. For customers who want Post Office box service when boxes are unavailable.") Accordingly, the Court **DISCHARGES** its Order to Show Cause and **DIRECTS** the Clerk of Court to update the Docket to reflect Plaintiff's current address.

## II. Motion to Proceed *in Forma Pauperis*

The Court now turns to Plaintiff's pending IFP Motion. All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application

/ / /

---

[2] That Order was also returned as undeliverable. (*See* ECF No. 14.)

for writ of habeas corpus, must pay a filing fee of $402.[3] *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if they are granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). "All persons, not just prisoners, may seek IFP status." *Moore v. Maricopa Cnty. Sheriff's Off.*, 657 F.3d 890, 892 (9th Cir. 2011). A plaintiff seeking IFP status must allege poverty "with some particularity, definiteness and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *McQuade*, 647 F.3d at 940). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Id*. While the IFP statute does not itself define what constitutes insufficient assets, a party need not "be absolutely destitute" to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Here, Plaintiff sufficiently demonstrates that paying court costs would hinder his ability to afford the necessities of life. Plaintiff has submitted an affidavit demonstrating that he is unemployed ("Ph.D. Student temporarily on leave") and does not have an income-earning spouse. (*See* ECF No. 2 at 2.) Plaintiff has not claimed any assets and his bank account has a balance of $0.54. (*Id.* at 2–3.) Moreover, Plaintiff has a monthly income of $871.00 and monthly expenses of $895.00. (*Id.* at 2, 5.) If a filing fee represents "roughly forty percent [of the movant]'s monthly income *before* expenses," the Court should grant IFP status. *See Escobedo*, 787 F.3d at 1235 (emphasis in original). Here, the filing fee of $402 represents roughly 46% of Plaintiff's monthly income before expenses. Accordingly, the Court **GRANTS** Plaintiff's IFP Motion.

/ / /

/ / /

---

[3] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

### III. Motion for Leave to File Electronically

The Court now turns to Plaintiff's Motion for Leave to File Electronically. In this District, "[a] pro se party seeking leave to electronically file documents must file a motion and demonstrate the means to do so properly by stating their equipment and software capabilities in addition to agreeing to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual." Office of the Clerk, United States District Court for the Southern District of California, *Electronic Case Filing Administrative Policies and Procedures Manual*, § 2(b) (Jan. 30, 2023), *available at* https://www.casd.uscourts.gov/_assets/pdf/cmecf/Electronic%20Case%20Filing%20Procedures%20Manual.pdf. Plaintiff's Motion for Leave to File Electronically asserts that he has a PACER.gov account but does not address his equipment and software capabilities nor agree to follow the rules in the Electronic Case Filing Administrative Policies and Procedures Manual. (*See* ECF No. 3.) Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Leave to File Documents Electronically.

### IV. Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B)

Because the Court has granted Plaintiff leave to proceed IFP, it must screen Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Under this statute, courts shall review and *sua sponte* dismiss any complaint that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that complaints "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" will not suffice. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Plaintiff's First Amended Complaint ("FAC") alleges Defendants Northcentral University and Board of Trustees for Northcentral University (collectively, "Northcentral") violated Title IX. (*See generally* ECF No. 6, "FAC" at 17–22.) Additionally, the FAC briefly states that this action is also brought pursuant to 42 U.S.C. § 1983 and California law, (*see* FAC ¶ 9), claiming Northcentral's "failure to properly supervise [Defendant] Jimmy Brown and his enablers . . . and [its] negligence in retaining Jimmy Brown and his enablers was in violation of California common law," (*id.* ¶ 56; *see also id.* ¶ 55 (claiming Northcentral violated "42 U.S.C. § 1983, as well as other Federal and State laws")). It appears, therefore, that in addition to the Title IX claim, Plaintiff has brought a Section 1983 claim, (*see id.* ¶ 14), and a claim of negligence under California common law, (*see id.* ¶ 56).[4] The Court addresses each claim in turn.

### A. Title IX Claim (Title VI Claim)

Plaintiff claims that Title IX protects against racial discrimination. (*See* FAC ¶¶ 73–73.) Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681. Based on the substance of Plaintiff's FAC, it appears that he is in fact attempting

---

[4]  The FAC also states that Northcentral engaged in fraud, which will be "a subject for Plaintiff's projected future 2nd Amended Complaint through leave from the Court." (*Id.* ¶ 51.) Plaintiff has not sought leave to file a Second Amended Complaint and therefore no fraud claims are currently pending before the Court. (*See generally* Docket.)

to bring a Title VI claim, not a Title IX claim. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Accordingly, the Court will analyze Plaintiff's claim under the pleading requirements of Title VI.

"To state a claim under [Title VI], a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir.1994), *overruled on other grounds*, *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). For the Title VI claim, the only named Defendant is Northcentral. (*See* FAC at 17 "Count I – Violations of Title IX [Title VI], 20 U.S.C 1681(a) et seq. (Defendants NCU and NCU Trustees)".) Plaintiff clearly alleges that Northcentral receives federal financial assistance. (*See* FAC ¶ 76.) Thus, the only remaining issue is whether Plaintiff sufficiently alleges that Northcentral engaged in racial discrimination.

Plaintiff alleges that two sets of Northcentral employees engaged in racial discrimination in violation of Title VI: (1) Professor Jimmy Brown and (2) Ashley Forrest and Brandon Romero. (*See id.* ¶¶ 79–80.) According to the FAC, Northcentral knew of this discrimination but "failed to carry out their duties to investigate and take corrective action," (*id.* ¶ 82), and "failed to supervise," the perpetrators (*id.* ¶ 86). Moreover, Plaintiff alleges Northcentral "showed a deliberate indifference by rejecting evidence of racial discrimination," "concluding that the victim had only experienced appropriate academic instruction," and "dismissing Plaintiff's complaint and grievances." (*Id.* ¶ 85.)

As for the alleged racial discrimination, Plaintiff claims that Professor Brown's use of a 12-week curriculum for an 8-week course constituted "racially motivated discrimination" and a "sabotage set-up." (*Id.* ¶ 68; *see also id.* ¶¶ 19, 22–30.) To survive screening, Plaintiff's claim of racial discrimination must have facial plausibility, meaning the "factual content [must] allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). Here, the underlying factual content—that Brown used a 12-week curriculum for an 8-week course—does not reasonably allow the Court to draw the inference that Brown discriminated against Plaintiff. To state a claim for discrimination, Plaintiff must allege that he "is being subjected to differential treatment." *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (first citing *Olmstead v. L. C.*, 527 U.S. 581, 614 (1999) (Kennedy, J., concurring in judgment) (the "normal definition of discrimination" is "differential treatment"); and then citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682, n. 22 (1983) (discrimination means "less favorable" treatment)). The FAC does not claim that Plaintiff was treated differently or less favorably than the other students in Brown's course. Thus, even taking Plaintiff's factual allegations as true, the Court is unable to draw the reasonable inference that Brown discriminated.

Next, the Court analyzes the sufficiency of Plaintiff's discrimination claims as to Defendants Forrest and Romero. According to the FAC, Forrest is a supervisor in Northcentral's academic advising and financial aid department (the "Department"), and Romero is her subordinate. (FAC ¶ 40; *see also id.* ¶ 7 (stating that Forrest and Romero are also professors).) Plaintiff allegedly reported his concerns about Brown's course length to Forrest and Romero, (*id.* ¶ 40), but the Department failed to adequately respond, (*id.* ¶ 45). Because Plaintiff has not adequately alleged that Brown discriminated against him, Forrest and Romero's allegedly inadequate response cannot by itself state a claim for discrimination.

Plaintiff also claims that Forrest and Romero failed to provide Plaintiff with his GradPlus Federal Backed Graduate Student Financial Aid Loans (the "GradPlus funds") and delayed in returning those GradPlus funds to the U.S. Department of Education. (*See id.* ¶¶ 45, 57, 69). Plaintiff claims this inaction and delay was due to the Department's "racially motivated prejudice." (*Id.* ¶ 90.) But aside from this conclusory allegation, Plaintiff does not provide any factual support for a connection between the Department's

conduct and the alleged racial discrimination. As Courts have repeatedly held, merely reciting the elements of a cause of action does not sufficiently state a claim. *See, e.g., Twombly*, 550 U.S. at 555. Based on the allegations in the FAC, the Court is unable to reasonably infer that Defendants Forrest and Romero discriminated on the ground of race.[5]

For the foregoing reasons, the Court finds that Plaintiff has failed to state a Title VI claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court therefore **DISMISSES** Plaintiff's Title VI cause of action.

### B. 42 U.S.C. § 1983 Claim

Plaintiff claims that "[Northcentral's] deliberate indifference before, during, and after the racially motivated assault, abuse of authority, and psychological molestation of Plaintiff was in violation of . . . 42 U.S.C. § 1983." (FAC ¶ 55.) To state a claim under Section 1983, a plaintiff must allege (1) "that a right secured by the Constitution or laws of the United States was violated" and (2) "that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

As for the first element, Plaintiff claims that Northcentral professor "Jimmy Brown racially discriminated against Plaintiff's constitutionally protected civil rights to a fair opportunity to further his education." (FAC ¶ 22.) Based on this assertion, the Court assumes Plaintiff's Section 1983 claim is premised upon a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."). Although education itself is not a fundamental right protected by the Equal Protection Clause, *see San Antonio School District v. Rodriguez*, 411 U.S. 1, 18 (1973); *see also Plyler v. Doe*, 457 U.S. 202,

---

[5]   Plaintiff's claim against Northcentral is premised only upon the university's alleged failure to appropriately respond to Brown, Forrest, and Romero's actions. (*See generally* FAC.) Because Plaintiff has failed to allege that these employees discriminated against him on the basis of race, his Title VI claim against Northcentral must fail as well.

221 (1982), an individual may assert that racial discrimination within education violates the Equal Protection Clause, *see Brown v. Board*, 347 U.S. 483, 495 (1954); *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 287–88 (1978) (collecting cases). Here, Plaintiff claims Defendant Brown's use of a 12-week curriculum for an 8-week course was "racially motivated discrimination" and a "sabotage set-up." (FAC ¶ 68; *see also id.* ¶¶ 19, 22–30.)

As discussed in Section IV.A, this conclusory allegation, without more, does not allow the Court to reasonably infer that Brown discriminated against Plaintiff or treated him differently than other students in Brown's course. *See Jackson*, 544 U.S. at 174. Moreover, Plaintiff provides no factual support for a connection between Brown's conduct and any alleged racial discrimination. Thus, even assuming the veracity of Plaintiff's factual allegations, the Court is unable to draw the reasonable inference that Defendant Brown violated the Fourteenth Amendment.

Even assuming "that a right secured by the Constitution or laws of the United States was violated," Plaintiff still has not alleged that the "violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Because the FAC only names Northcentral as a Defendant to the Section 1983 claim, the Court will only analyze the potential liability of the university and its board.[6] (*See* FAC ¶ 55.) Plaintiff claims Northcentral is a "public university," (*see id.* ¶ 3), but the Court takes judicial notice of the fact that, according to the United States Department of Education,[7] Northcentral is a "private not-for-profit" university, *see Lee v. Los Angeles*, 250 F.3d 668, 669 (9th Cir.

---

[6] Although Plaintiff alleges Brown engaged in discrimination, he does not allege that Brown violated Section 1983. When analyzing the sufficiency of a *pro se* complaint, a court may not "supply essential elements of claims that were not initially pled," much less add Defendants to a claim. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[7] U.S. Department of Education, National Center for Education Statistics, *College Navigator: Northcentral University*, https://nces.ed.gov/collegenavigator/?q=northcentral&s=all&id=444130.

2001) ("a court may take judicial notice of 'matters of public record'" (citations omitted)).[8] If the Court assumed Northcentral was public as the FAC states, Plaintiff would certainly be precluded from bringing this claim because states and arms of states—including public universities and their governing bodies—cannot be sued under Section 1983. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (finding a state university cannot be sued as a "person" under Section 1983); *see also Hong v. Grant*, 403 F. App'x 236, 237 (9th Cir. 2010); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).

A plaintiff may only bring a Section 1983 claim against a private actor if the plaintiff can allege that the defendant acted "under color of state law." *See Long*, 442 F.3d at 1185. This requirement ensures that "liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). To plausibly allege that a defendant acted "under color of state law" a plaintiff must, at minimum, plead facts that demonstrate the defendant acted "with the knowledge of and pursuant to" state law or custom.[9] *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935 n.18 (1982) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 162 n.23 (1970)). Here, Plaintiff claims that "[a]t all relevant times, [Northcentral] and Jimmy Brown were acting under color of law, specifically under color of statutes, ordinances, regulations, policies, customs and usages of the State of California or [Northcentral]." (FAC ¶ 14.) Yet, the

---

[8] Under *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), a court analyzing a complaint pursuant to Section 1915 may "pierce the veil of the complaint's factual allegations" to determine if a factual contention is baseless. Here, Plaintiff's contention that Northcentral is a public university is at odds with the public record indicating that it is a private university.

[9] Courts commonly construe the "color of state law" requirement of Section 1983 similar to the "state action" requirement of the Fourteenth Amendment. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 182 & n.4 (1988). Typically, state action requires that (1) a private actor performs a traditional public function, *see Marsh v. State of Ala.*, 326 U.S. 501, 507 (1946); (2) the government facilitates the private action, *see Shelly v. Kraemer*, 334 U.S. 1, 13 (1948); or (3) there is entanglement between the actions of the government and of the private actor, *see Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961). Plaintiff has not alleged any type of state action here.

FAC fails to identify any state law or custom that these Defendants acted pursuant to, and a "formulaic recitation of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a Section 1983 claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court therefore **DISMISSES** Plaintiff's 42 U.S.C. § 1983 cause of action.

### C. Negligence Claim

Plaintiff claims that Northcentral's "failure to properly supervise Jimmy Brown and his enablers ([Forrest and Romero]) and their negligence in retaining Jimmy Brown and his enablers was in violation of California common law." (FAC ¶ 56.) The essential elements of negligence under California common law are (1) a legal duty to use reasonable care and (2) a breach of that duty (3) which actually and proximately causes (4) damages to a person or property. *See, e.g., Mendoza v. City of L.A.*, 66 Cal. App. 4th 1333, 1339 (1998) (citing *Wattenbarger v. Cincinnati Reds, Inc.*, 28 Cal. App. 4th 746, 751 (1994)).

Here, the FAC is void of any factual allegations related to the elements of common law negligence. Plaintiff has not alleged that the Parties had a contractual relationship or any other type of special relationship that legally entitled him to a certain duty of care. *See Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958); *Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merril LLP,* 59 Cal. App. 4th 568, 573 (2014). Even assuming Northcentral had a general duty of care to act as a reasonably prudent university and board of trustees, Plaintiff has still failed to allege how Northcentral's conduct constituted a breach of that duty. Finally, the Complaint does not allege how such a breach actually and proximately caused Plaintiff damages.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim for common law negligence pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court therefore **DISMISSES** Plaintiff's negligence cause of action.

/ / /

/ / /

### D. Leave to Amend

Although Plaintiff has failed to state a Title VI claim, Section 1983 claim, or a claim for common law negligence, the Court grants Plaintiff leave to amend. *See Rosati v. Igbinoso,* 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint.

/ / /

# CONCLUSION

In light of the foregoing, the Court:

(1) **DISCHARGES** its Order to Show Cause (ECF No. 13);

(2) **DIRECTS** the Clerk of Court to update the Docket to reflect Plaintiff's current address consistent with his Notice of Change of Address (ECF No. 12);

(3) **GRANTS** Plaintiff's Motion to Proceed *in Forma Pauperis* (ECF No. 2) pursuant to 28 U.S.C. § 1915(a);

(4) **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Leave to File Documents Electronically (ECF No. 3); and

(4) **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint (ECF No. 6) *sua sponte* for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff **MAY FILE** an amended complaint curing the above-identified deficiencies <u>within sixty (60) days of the date of this Order</u>. *If Plaintiff fails to file an amended complaint within the time provided, this action shall be closed without further Order of the Court.*

**IT IS SO ORDERED.**

Dated: April 17, 2023

_____
Honorable Todd W. Robinson
United States District Judge