1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 JEROME L. GRIMES, | Case Nos.:  22-CV-1321 TWR (JLB) |
| 12                                    Plaintiff, | |
| 13 v. | **ORDER (1) DENYING WITHOUT** |
| | **PREJUDICE PLAINTIFF'S** |
| 14 BOARD OF TRUSTEES FOR | **REQUEST FOR ECF PERMISSION;** |
| NORTHCENTRAL UNIVERSITY; | **(2) DISMISSING WITHOUT** |
| 15 (NCU) NORTHCENTRAL | **PREJUDICE PLAINTIFF'S SECOND** |
| UNIVERSITY, official capacity; | **AMENDED COMPLAINT** |
| 16 ASHLEY FORREST, individual and | |
| 17 official capacity; BRANDON ROMERO, | (ECF Nos. 17, 18, 19) |
| individual and official capacity; JIMMY | |
| 18 BROWN, individual and official capacity, | |
| 19                                  Defendants. | |

20
21
22
23

24        Pending before the Court are Plaintiff Jerome L. Grimes's Second Amended
25 Complaint (ECF No 17 ("Second Amended Complaint" or "SAC")),[1] Request for ECF
26
27 _____
28 [1]    Plaintiff styles his amended complaint as the "Third Amended Complaint," (*see* ECF No. 17), but
     Plaintiff never successfully filed a Second Amended Complaint because the Court struck the Second

Permission (ECF No. 18), and "Motion for Leave to (ECF) Electronic Filing Permission" (ECF No. 19 ("ECF Mot.")).  Because Plaintiff is proceeding pro se and has been granted *in forma pauperis* ("IFP") status, the Court must screen his Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).  For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's ECF Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Second Amended Complaint with leave to amend.

## BACKGROUND

Plaintiff initiated this action on September 2, 2022, filing a Complaint, (*see* ECF No. 1); Motion for Leave to Proceed IFP, (*see* ECF No. 2); and Motion for Leave to File Electronically, (*see* ECF No. 3).  He filed his First Amended Complaint on November 23, 2022, (*see* ECF No. 6), and attempted to file a Second Amended Complaint on January 29, 2023, (*see* ECF No. 9), which the Court struck for failure to obtain the Court's leave in accordance with Federal Rule of Civil Procedure 15(a)(2) prior to filing.  (*See* ECF No. 10).

Meanwhile, the Court served Plaintiff with several filings via U.S. Mail Service, (*see* ECF Nos. 4, 5, 10), each of which was returned by the Post Service as undeliverable.  (*See* ECF Nos. 7, 8, 11.)  On March 16, 2023, Plaintiff filed a Notice of Change of Address, which the Clerk of Court designated as "incomplete."  (*See* ECF No. 12.)  Consequently, on March 20, 2023, the Court ordered Plaintiff to file a complete Notice of Change of Address or to show cause why this action should not be dismissed within fourteen days.[2] (*See* ECF No. 13.)

On April 17, 2023, the Court issued its Order (1) Discharging Order to Show Cause, (2) Directing Clerk of Court to Update Plaintiff's Address, (3) Granting Motion to Proceed *in Forma Pauperis*, (4) Denying Motion for Leave to File Electronically, (5) Screening Complaint Pursuant to 28 U.S.C. [§] 1915(e), and (6) Dismissing Complaint for Failure to

---

Amended Complaint that Plaintiff attempted to file on January 9, 2023.  (*See* ECF Nos. 9–10.) Accordingly, the Court treats the operative complaint as the Second Amended Complaint.

[2]     That Order was also returned as undeliverable.  (*See* ECF No. 14.)

State a Claim.  (ECF No. 15 ("Screening Order").)  As relevant here, the Court denied Plaintiff's initial motion for leave to file electronically because Plaintiff's motion failed to address his equipment and software capabilities and failed to assert his agreement to follow the rules in the Electronic Case Filing Administrative Policies and Procedures Manual. (Screening Order at 4.)  The Court similarly found Plaintiff's First Amended Complaint pursuant to Title VI, 42 U.S.C. § 2000d, and common law negligence deficient because Plaintiff failed to allege essential elements of his claims but granted Plaintiff sixty days' leave to file an amended complaint.  (*See id.* at 5–13.)

Plaintiff timely filed the operative complaint on April 24, 2023, in addition to a document titled "Address Appeasement And: Request for ECF Filing Permission."  (ECF Nos. 17–18.)  On August 28, 2023, Plaintiff filed a second "Motion for Leave to (ECF) Electronic Filing Permission."  (ECF No. 19.)

## ECF MOTION

The Court now turns to Plaintiff's "Address Appeasement And: Request for ECF Filing Permission," (ECF No. 18), and ECF Motion, (ECF No. 19).  Because the former "Address Appeasement And: Request for ECF Filing Permission" is largely incoherent, (*see* ECF No. 18 at 2), the Court treats Plaintiff's ECF Motion (ECF No. 19) as the operative request.

Pursuant to Civil Local Rule 5.4, "[e]xcept as prescribed by local rule, order, or other procedure, the Court has designated all cases to be assigned to the Electronic Filing System."  S.D. Cal. CivLR 5.4(a).  With respect to pro se litigants, however, "[u]nless otherwise authorized by the court, all documents submitted for filing to the Clerk's Office . . . must be in legible, paper form."  Office of the Clerk, United Stated District Court for the Southern District of California, Electronic Case Filing Administrative Policies and Procedures Manual, § 2(b) (Sept. 8, 2023).  "A pro se party seeking leave to electronically file documents must file a motion and demonstrate the means to do so properly by stating their equipment and software capabilities in addition to agreeing to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual."  *Id.*  The manual

refers to the Court's official website for CM/ECF technical specifications, *id.* at § 1(i), which include a "[c]omputer running Windows or Macintosh;" "[s]oftware to convert documents from a word processor format to portable document format (PDF)," such as "Adobe Acrobat 7.0 and higher;" "[i]nternet access supporting a transfer rate of 56kb or higher;" a compatible browser, such as "Firefox 15, Internet Explorer 9, and Safari 5.1/6 or later version;" a "[s]canner to image non-computerized documents 400 pixels per inch (ppi);" and a PACER account. United States District Court, Southern District of California, CM/ECF Information: General Information, https://www.casd.uscourts.gov/cmecf.aspx #undefined1 (last visited Dec. 8, 2023).

Plaintiff's ECF Motion comprises a declaration in which he identifies the specifications for his computer equipment and avers, "[t]he capabilities of the PLAINTIFF'S Dell laptop (Notebook) is speed, reliability, storage, and accuracy for repetitively uploading pdf-documents to the HEREIN Court's ECF System." (ECF Mot. at 2.) Plaintiff further avers that he has "read" the CM/ECF Administrative Policies and Procedures Manual and that he "agree[s] to abide by the rules and policies" outlined therein. (*Id.* at 2–3.)

Plaintiff's ECF Motion remains deficient. While Plaintiff includes information such as the make and model of his laptop, he fails to indicate whether his laptop complies with the requirements set forth on the Court's official website for CM/ECF technical specifications. *See* United States District Court, Southern District of California, CM/ECF Information: General Information, https://www.casd.uscourts.gov/cmecf.aspx#undefined1 (last visited Dec. 8, 2023). Specifically, while Plaintiff indicates that he has "Windows Pro OA," and that "OA = OEM Activation which means that Windows version on that sticker would automatically activate if you use the OEM's Windows DVD to install Windows," it is not clear from the ECF Motion whether Plaintiff actually is running Windows. (*See* ECF Mot. at 2.) The ECF Motion similarly indicates that Plaintiff can "repetitively upload[] pdf-documents" to ECF from his laptop but fails to indicate whether Plaintiff has "[s]oftware to convert documents from a word processor format to portable

document format (PDF)," such as "Adobe Acrobat 7.0 and higher," or a "[s]canner to image non-computerized documents 400 pixels per inch (ppi)." (*See id.*)  Nor does Plaintiff state whether he has "[i]nternet access supporting a transfer rate of 56kb or higher" or a compatible browser, such as "Firefox 15, Internet Explorer 9, and Safari 5.1/6 or later version."  (*See id.*)    In light of these failings, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's ECF Motion.

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

Because the Court previously granted Plaintiff leave to proceed IFP, it must screen Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  Under this statute, courts shall review and *sua sponte* dismiss any complaint or part thereof that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

Pursuant to Rule 8, a pleading must contain "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Rule 12(b)(6) requires that complaints "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  And the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" will not suffice.  *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

1   Courts have a duty to construe a pro se litigant's pleadings liberally.  *See Karim-*
2   *Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).   In giving liberal
3   interpretation to a *pro se* complaint, however, a court may not "supply essential elements
4   of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673
5   F.2d 266, 268 (9th Cir. 1982).  The district court should grant leave to amend if it appears
6   "at all possible that the plaintiff can correct the defect," unless the court determines that
7   "the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d
8   at 1130–31 (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v.*
9   *Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

10   Plaintiff's Second Amended Complaint alleges that Defendants Northcentral
11   University and its Board of Trustees (together, "Northcentral") violated Title VI.[3]  (*See*
12   *generally* SAC at 2, 5–17.)  Additionally, the SAC briefly states that Plaintiff is attempting
13   to hold "DEFENDANT vicariously liable for supervisory negligence" related to the alleged
14   misconduct of a Northcentral employee, Ashley Forrest.[4]  (*See id.* at ¶ 7.)  It appears,

15

16   [3]      While Plaintiff only names the Board of Trustees of Northcentral University as a Defendant in the
17   caption of his SAC, he also includes several references to the "NCU Defendants," which he identifies as
     "NCU and NCU Trustees."  (*See* Compl. at 1, ¶¶ 6, 36, 51.)  Rule 10(a) of the Federal Rules of Civil
18   Procedure requires plaintiffs to specifically name each defendant in the caption of their complaint.  Fed.
     R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").  A defendant is not presumed a
19   party to the action if he is not served or named in the caption unless he is specifically and sufficiently
     identified later in the body of the complaint.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992);
20   *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be
     properly in a case if the allegations in the body of the complaint make it plain that the party is intended as
21   a defendant." (citing *Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1959))); *see also Greenwood v.*
22   *Ross*, 778 F.2d 448, 451–52 (8th Cir. 1985) (failure to list a defendant in the caption does not mean the
     action cannot be maintained against him where he is identified in the body of the complaint).   In
23   accordance with this Court's obligation to construe pro se pleadings liberally, *Karim-Panahi*, 839 F.2d at
24   623, the Court interprets Plaintiff's SAC as stating claims against both Northcentral and its Board of
     Trustees.

25

26   [4]      Plaintiff has not realleged a claim pursuant to 42 U.S.C. § 1983.  (*See generally* SAC.)  Nor has
     he realleged claims against Forrest, Brown, or Romero.  (*See id.*)  The Court considers the § 1983 claim
27   and the claims against Forrest, Brown, and Romero waived.  *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa*
     *County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not
28   re-alleged in an amended pleading may be "considered waived if not repled"); *Hal Roach Studios, Inc. v.*
     *Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989).

22-CV-1321 TWR (JLB)

therefore, that in addition to the Title VI claim, Plaintiff has brought a claim for negligent supervision under California common law.  The Court addresses each claim in turn.

## I.     Title VI Claim

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (explaining that Title VI only prohibits intentional discrimination).  "To state a claim under [Title VI], a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir.1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). Plaintiff clearly alleges that Northcentral receives federal financial assistance.  (*See* SAC ¶ 4.)    Thus, the only remaining issue is whether Plaintiff sufficiently alleges that Northcentral engaged in racial discrimination.

Plaintiff's Second Amended Complaint shifts the focus of his Title VI claim from the allegedly disparate treatment of his professor, Jimmy Brown, to the allegedly racially charged conduct of Northcentral administrator Ashley Forrest.  (*Compare* SAC, *with* ECF No. 6.)  From Plaintiff's allegations, the Court infers that he now is attempting to state a claim for a potentially hostile school environment.   To establish a hostile educational environment claim under Title VI, a plaintiff must show that (1) there was a racially hostile environment, (2) the school had notice of the problem, and (3) the school failed to respond adequately to redress the racially hostile environment. *Monteiro v. Tempe Union*, 158 F.3d 1022, 1033 (1998).  A "racially hostile environment" is "one in which racial harassment is severe, pervasive or persistent so as to interfere with or limit the ability of an individual to participate in or benefit from the services, activities or privileges provided by the recipient." *Id.* (citation omitted); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999) (discussing standard for harassment claims under Title IX framework,

which is modeled on Title VI framework).   The existence of a hostile educational environment is a question of fact that must be determined based on the totality of the circumstances, "including the victim's race and age." *Monteiro*, 158 F.3d at 1033.  "Racial harassment creates a hostile environment if it is sufficiently severe that it would interfere with the educational program of a reasonable person of the same age and race as the victim." *Id.*

A school that is "'deliberately indifferent' to its students' right to a learning environment free of racial hostility and discrimination . . . is liable for damages under Title VI." *Id.* at 1034 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)); *see also Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006) (explaining that deliberate indifference is "the standard for imputing liability to the Trustees" under analogous Title IX).  Pursuant to this standard, a school is liable for its inaction "if the need for intervention was so obvious, or if inaction was so likely to result in discrimination, that 'it can be said to have been deliberately indifferent to the need." *Monteiro*, 158 F.3d at 1034 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *see also Doe v. Willits Unified Sch. Dist.*, 473 Fed. App'x 775, 776 (9th Cir. 2012) ("To meet this high standard, there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable."); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (explaining that a school may be held liable for deliberate indifference under Title IX where the school's response was "clearly unreasonable in light of the known circumstances" (quoting *Davis*, 526 U.S. at 648)).

Plaintiff alleges that Northcentral's employee Ashley Forrest, a white woman who has worked at Northcentral as both a Financial Aid Team Lead and Admissions Registration Academic Advisor between 2021 and 2022, (SAC ¶¶ 7–8), "racially discriminated against Plaintiff's constitutionally protected civil rights to a fair opportunity to further his education without racial discrimination," (*id.* ¶ 17; *see also id.* ¶¶ 42–43).  As best the Court can discern regarding the alleged racial discrimination, Plaintiff claims that Forrest stole or refused to disburse $16,000 of Plaintiff's GradPlus Financial Aid for his

Ph.D. program at Northcentral pursuant to "her own racially motivated agenda." (*Id.* ¶¶ 16, 21–22; *see also* ¶¶ 26, 30, 32, 35, 39, 45, 50.)  Forrest's thefts allegedly spanned Plaintiff's Fall 2021, Summer 2022, and Spring 2022 terms at Northcentral, but Plaintiff claims he did not learn of the theft of the Summer 2022 and Spring 2022 loan disbursement funds until October 21, 2022.[5] (*Id.* ¶ 50.)  He claims that on August 21, 2021, Forrest "verbally via telephone stated: '*I am taking EVERYTHING Nigga*.'" (*Id.* ¶ 18 (emphasis in original.))  He further states that Forrest "misrepresented to Plaintiff that this was the appropriate way per policy to deny" disbursement of Plaintiff's 2021 funding.  (*Id.* ¶ 23.) He also alleges that he was unaware that Forrest was racially discriminating against him until after he viewed a "media release about a similar University Institution's (i.e., MSU's) 2016-sexual assault convictions of faculty such as Lawrence Gerard Nassar" in October 2022.  (*Id.* ¶ 30.)

According to the Second Amended Complaint, Northcentral had knowledge of Forrest's racial discrimination against him but "show[ed] a deliberate indifference to the complaints being made" and "actively discouraged or ignored reports/complaints" about Forrest's discrimination, "failed to take any action in response" to Plaintiff's 2021 complaint about Forrest, and, consequently, "enabled their employees to STEAL **$16,000**" of Plaintiff's federal loan money.  (*Id.* ¶¶ 36, 39 (emphasis in original), 49; *see also id.* ¶¶ 29, 40, 46–47.)  He alleges he filed a "SEE SOMETHING SAY SOMETHING" pleading with Northcentral in 2021 about the alleged theft, which was dismissed because Plaintiff "did not understand the 'financial aid funding cycle.'" (*Id.* ¶¶ 43–44.)  He also claims to have discovered, through his own investigation, that Northcentral "utilized illegal technology" on him "known as economic espionage act but with terror [sic] INTENT versus Anti-terror [sic] INTENT." (*Id.* ¶ 21.)

---

[5]    The Court cannot discern the total amount Forrest is alleged to have stolen or refused to disburse to Plaintiff, who variously alleges that Forrest stole $6,000 and $16,000 of his loan disbursement funds in 2021, (SAC ¶¶ 16, 43), and $16,000 of his loan disbursement funds in 2022, (*id.* ¶ 43).  Elsewhere, he also claims the total sum stolen from his loan disbursement funds amounts to $21,000.  (*Id.* ¶ 21.)

To survive screening, Plaintiff's claim of racial discrimination must have facial plausibility, meaning the "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   Here, the salient allegations—that Forrest stole or refused to disburse Plaintiff's loan money and informed him of such on one occasion via a phone call in which she used a racial slur, (*see* SAC ¶¶ 18, 21)—permit the Court to infer that racial animus motivated her conduct. *See Monteiro*, 158 F.3d at 1034 (concluding that plaintiff's allegations that African American students at school were called a racial epithet by white children and that the same epithet was scrawled on the school's walls satisfied the first element of Title VI hostile environment claim). Plaintiff's subsequent allegations, however, which are difficult to understand, also appear to be internally inconsistent and contradictory.  For example, Plaintiff's allegation that Forrest used a racial slur when she told him she was stealing his loan money makes no sense given his allegations that: (1) Forrest stole Plaintiff's loan money "due to covert unfairplay [sic]" by Northcentral professor Jimmy Brown and Forrest, who apparently had a "ROUSE [sic] to steal, defraud, deny, and permanently deprive" Plaintiff of his loan money, (SAC ¶ 21); (2) Plaintiff did not know Forrest was stealing the loan money "for her own racially motivated agenda," (*id.* ¶ 22); (3) Forrest told Plaintiff "this was the appropriate way per policy to deny" Plaintiff's loan money, (*id.* ¶ 23); (4) Forrest caused a "denial of" Plaintiff's loan disbursement, (*id.* ¶¶ 27, 30, 32); (5) Plaintiff "first realized" the "denial" of his loan disbursement was "racial discrimination abuse of authority" after viewing a "media release about a similar University Institution's (i.e., MSU's) 2016-sexual assault convictions of faculty such as Lawrence Gerard Nassar" in "October 2022," (*id.* ¶¶ 30–32); (6) Plaintiff's loan money apparently was "RETURN[ed] BACK" to the U.S. Department of Education, (*id.* ¶ 49); and (7) the Financial Aid Department informed Plaintiff that his loan money had "'not' [been] received from the U.S. Department of Education," (*id.* ¶ 45).

22-CV-1321 TWR (JLB)

The Court is troubled by the inconsistences in Plaintiff's allegations, particularly his repeated representation that he did not realize he was experiencing racial discrimination until October 2022, when he read about the conviction of Larry Nassar while traveling on a greyhound bus.  (*Id.* ¶¶ 30–32; *see also* ¶ 22 (alleging he did not know theft was based on Forrest's "racially motivated agenda")).  That Forrest's use of a racial slur did not put Plaintiff on notice in 2021 that he might be experiencing racial discrimination simply is not plausible.  As Forrest's alleged phone call to Plaintiff is the sole nonconclusory fact that might support the existence of a racially hostile environment to which Northcentral was deliberately indifferent,[6] *see Monteiro*, 158 F.3d at 1034, the presence of specific, inconsistent factual allegations compels the Court's conclusion that Plaintiff has not adequately stated a Title VI claim.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (affirming dismissal of antitrust claim where plaintiff's "overcharge theory" was "implausible in the face of contradictory market facts alleged in her complaint"); *Jones v. Bank of Am., N.A.*, No. 18-cv-5631, 2021 WL 3163758, at *7 (C.D. Cal. Feb. 26, 2021) (dismissing "difficult to comprehend" and "internally inconsistent" factual allegations as "implausible" under *Iqbal*); *Hernandez v. Select Portfolio, Inc.*, No. 15-cv-1896, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) (dismissing claim as "inherently implausible" where complaint included contradictory factual allegations that plaintiff's loan modification was complete in February 2014, and that defendant requested additional information related to loan modification in April 2014, to which plaintiff requested additional time to comply); *see also Iqbal*, 556 U.S. at 679 (explaining that court's plausibility determination involves a "context-specific" inquiry that requires a reviewing court "to draw on its judicial experience and common sense").

---

[6]     Plaintiff is reminded that, regardless of his pro se and IFP status, each time he files a pleading with the Court, he is certifying that, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading's "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b)(3).  The Court "may impose an appropriate sanction" for violation of Rule 11(b).  Fed. R. Civ. P. 11(c).

Moreover, nowhere does Plaintiff articulate a "clear and plain statement" of his claim, as required by Rule 8(a).  While Plaintiff frequently refers to race throughout the Second Amended Complaint, the pleading is too disjointed and unintelligible for the Court to determine Plaintiff's claim and too vague to put Northcentral on notice of the claim against it.  *See Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (explaining that a complaint that is "verbose, confusing and conclusory" violates Rule 8).  The Second Amended Complaint also suffers from repeated frivolous allegations concerning various individuals' "terror intent," "covert terror," and "economic espionage," as well as inexplicable references to the Unabomber, University of San Francisco Campus Police Officer Nathan Johnson, Nancy Pelosi and her husband, and Plaintiff's own parents.[7]  (*See* SAC ¶¶ 21, 26, 33, 34, 51, 58); *see also Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989) (explaining that judges reviewing claims pursuant to § 1915 have the authority to "pierce the veil of the complaint's factual allegations" and dismiss "claims describing fantastic or delusional scenarios").  Accordingly, the Court dismisses Plaintiff's Title VI claim for failure to state a claim and for violation of Rule 8.

## II.   Negligent Supervision Claim

Plaintiff reasserts his claim that Northcentral was negligent, alleging that Northcentral is "vicariously liable for supervisory negligence" of Forrest.  (SAC ¶ 7.)  The Court interprets this allegation as an attempt to state a claim for negligent supervision.[8]

To recover for negligent supervision, a plaintiff must prove the traditional elements of actionable negligence under California common law, which are (1) a legal duty to use reasonable care and (2) a breach of that duty, (3) which actually and proximately causes

---

[7]   Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the fact that the U.S. District Court for the Northern District of California entered a pre-filing order regarding Plaintiff's cases related, among other things, to "covert terrorism."  *Grimes v. Mourgos*, No. 07-mc-80199, 2007 WL 2377025, at *1 (N.D. Cal. Aug. 21, 2007).

[8]   To the extent Plaintiff is attempting to allege that Northcentral is vicariously liable under Title VI for damages, that claim appears to be foreclosed.  *See United States v. County of Maricopa*, 889 F.3d 648, 652 (9th Cir. 2018) (explaining entity cannot be vicariously liable under Title VI).

(4) damages to a person or property.  *See Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1371–72 (2003) (explaining that a student asserting negligent supervision still is required to prove elements of negligence regardless of whether defendant is a school district); *see also, e.g., Mendoza v. City of L.A.*, 66 Cal. App. 4th 1333, 1339 (1998) (citing *Wattenbarger v. Cincinnati Reds, Inc.*, 28 Cal. App. 4th 746, 751 (1994)).  "[A]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee.  Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996) (internal citation omitted).  "To establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. County of Riverside*, 238 Cal. App. 4th 889, 902 (2015).  "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006).

In the Court's Screening Order, the Court explained that "the FAC is void of any factual allegations related to the elements of common law negligence."  (Screening Order at 11.)  Specifically, the Court pointed out that

> Plaintiff has not alleged that the Parties had a contractual relationship or any other type of special relationship that legally entitled him to a certain duty of care. *See Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958); *Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merril LLP,* 59 Cal. App. 4th 568, 573 (2014).  Even assuming Northcentral had a general duty of care to act as a reasonably prudent university and board of trustees, Plaintiff has still failed to allege how Northcentral's conduct constituted a breach of that duty.  Finally, the Complaint does not allege how such a breach actually and proximately caused Plaintiff damages.

(*Id.*)  The Second Amended Complaint does not cure these deficiencies.  While Plaintiff alleges that Northcentral "had an obligation under federal and state law to investigate complaints/reports," (SAC ¶ 37), Plaintiff fails to identify a specific statute creating a legal

duty.  Plaintiff also alleges that Northcentral had obligations pursuant to its "Office of Institutional Equity" policy, (*id.* ¶ 38), but Plaintiff does not allege that the policy gave rise to a contract between Plaintiff and Northcentral pursuant to which Northcentral owed Plaintiff a duty.  Moreover, the Court is dubious that the Second Amended Complaint offers the precise language appearing in any relevant policy given the many typographical errors in Plaintiff's allegedly quoted language.  (*See id.* ¶¶ 38–39.)

Even if the Court were to assume that Plaintiff has established that Northcentral owed him a general duty of care in supervising employees like Forrest, Plaintiff, again, has not alleged how Northcentral's conduct constitutes a breach of that duty.  Nor has Plaintiff alleged how Northcentral's breach actually and proximately caused Plaintiff's damages.  As to causation, he alleges that, "[a]s a direct and/or proximate result of the NCU Defendants' actions and inactions, PLAINTIFF has suffered and continues to suffer" a variety of harms, including "self-employment market-share for his Business Plan Coloring Book for K-12 Children & Adults in 11-different [sic] countries and 11-different [sic] languages," (*id.* ¶ 51), and "derail[ment] [of] the PLAINTIFF'S prospective '**2028**-Guinness Books [sic] of World Records-***PhD-Owner-Olympiad Quest*** and **2022**-Sports Arbitration for **2028**-Summer Olympics Los Angeles International World Games Quest'-Time Scheduling & In Pro Se WORK for the Venue sought via PLAINTIFF'S 9th Amendment Rights to the Access to the Courts and Sports Arbitration collegiate and non-collegiate status and venues, protected by the U.S. Constitution," (*id.* ¶ 35 (emphasis in original)).  He does not, however, allege any facts showing how Northcentral's breach caused the many harms Plaintiff claims to have suffered.  As courts have repeatedly held, merely reciting the elements of a cause of action does not suffice to state a claim.  *See, e.g.*, *Twombly*, 550 U.S. at 555.

## III.   Leave to Amend

Although Plaintiff has twice failed to state a Title VI claim and a negligence claim, because the focus of his amended pleading has shifted substantially from his prior pleading, the Court will grant Plaintiff one final opportunity to amend.  *See Rosati v. Igbinoso*, 791

F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

To be clear, the Court is granting Plaintiff leave to amend his Title VI and negligence claims against Defendants Northcentral and Northcentral's Board of Trustees.  Plaintiff may not add new claims or parties, or resurrect claims that have been waived, *see supra* note 4, without leave of Court.

## CONCLUSION

In light of the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Second Amended Complaint (ECF No. 17) *sua sponte* for failing to comply with Rule 8 and for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff **MAY FILE** an amended complaint curing the above-identified deficiencies within sixty (60) days of the date of this Order.  *If Plaintiff fails to file an amended complaint within the time provided, this action shall be closed without further Order of the Court.*

**IT IS SO ORDERED.**

Dated:  January 12, 2024

Honorable Todd W. Robinson
United States District Judge